[Cite as *In re C.R.*, 2020-Ohio-4082.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| C.R., A.D., & J.D. | Hon. W. Scott Gwin, J.<br>Hon. Craig R. Baldwin, J. |
| | Case Nos. 2020CA00044, 2020CA00045,<br>& 2020CA00046 |
| | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of<br>Common Pleas, Juvenile Division, Case<br>Nos. 2018JCV00666, 2018JCV00667 &<br>2018JCV00668 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 12, 2020 |

APPEARANCES:

| For Plaintiff-Appellee | For Mother Defendant-Appellant |
|---|---|
| BRANDON J. WALTENBAUGH<br>Stark County Department of Jobs<br>And Family Services<br>402 – 2nd Street, S.E.<br>Canton, Ohio  44702 | BERNARD L. HUNT<br>2395 McGinty Road, N.W.<br>North Canton, Ohio  44720 |

*Hoffman, P.J.*

{¶1}   In Stark App. Nos. 20-44, 20-45, and 20-46, Appellant Tabitha Flowers ("Mother") appeals the February 3, 2020 Judgment Entries and accompanying Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights and responsibilities with respect to her three minor children ("Child 1", "Child 2", and "Child 3", individually; and "the Children", collectively), and granted permanent custody of the Children to appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}   Mother and Jeffrey Ramsey ("Father Ramsey") are the biological parents of Child 1.[1]   Mother and Bernard Daugherty, Jr. ("Father Daugherty") are the biological parents of Child 2 and Child 3.[2]  On June 26, 2018, SCDJFS filed complaints alleging the Children were dependent and/or neglected.  The trial court conducted an emergency shelter care hearing on June 27, 2018.  Neither Mother nor Fathers appeared.  The trial court placed the Children in the emergency temporary custody of SCDJFS.   At a pretrial hearing on July 25, 2018, Mother requested an evidentiary hearing with regards to adjudication and disposition.

{¶3}   The trial court conducted an adjudication and dispositional hearing on September 13, 2018.  SCDJFS moved to delete the allegations of neglect.  Mother stipulated to findings of dependency.  Ramsey did not appear.  Following SCDJFS's presentation of evidence with regards to Father Ramsey, the trial court found Child 1 to be dependent.  Father Daugherty stipulated to a finding of dependency as to Child 2 and

---

[1] Father Ramsey is not a party to this Appeal.
[2] Father Daugherty is not a party to this Appeal.

Child 3.  The trial court found the Children to be dependent and proceeded to disposition. Mother was ordered to complete her substance abuse treatment and maintain sobriety. Mother had been arrested and was completing inpatient treatment as ordered by the criminal court.  The trial court placed the Children in the temporary custody of SCDJFS.

{¶4}   The trial court conducted a review hearing on December 21, 2018.  The Children's attorney/guardian ad litem indicated Mother and Father Daugherty were doing a "fantastic" job.  Mother was compliant with her Summit County probation, was attending counseling at Coleman Behavioral Health, had successfully completed her inpatient substance abuse treatment, and was providing negative drug screens.  Mother voluntarily requested and completed parenting classes.  The trial court approved and adopted the case plan and maintained the status quo.

{¶5}   On March 29, 2019, SCDJFS filed a motion to extend temporary custody. Following a review hearing on August 20, 2019, the trial court extended temporary custody to December 26, 2019, and maintained the status quo.  SCDJF filed motions for permanent custody on November 4, 2019.  At a review hearing on November 21, 2019, the trial court found no compelling reason to preclude a request for permanent custody to SCDJFS.

{¶6}   The guardian ad litem submitted her report on January 9, 2020.  The guardian recommended the Children be placed in the permanent custody of SCDJFS. The trial court conducted a hearing on SCDJF's motions for permanent custody on January 16, 2020.

{¶7}   Rachael William, the ongoing caseworker assigned to the family, testified SCDJFS had been working with the family on a non-court basis since November, 2017,

after Mother was arrested for using methamphetamine and violating her probation. Mother was pregnant with Child 3 at the time. Child 1 and Child 2 were staying with Father Daugherty while Mother was in a residential correctional center. After Father Daugherty was arrested for using methamphetamine and violating his probation, Child 1 and Child 2 stayed with relatives. On February 8, 2018, Mother was released from the treatment facility and gave birth to Child 3 four days later. SCDJFS put a safety plan in place.

**{¶8}** Mother's initial case plan included substance abuse treatment, mental health services, complying with probation, and obtaining housing. Mother was diagnosed with depression and anxiety. Individual counseling was recommended, but Mother was inconsistent with counseling.

**{¶9}** Mother continued to test positive for methamphetamine, which lead to probation violations, arrests, and incarcerations. As a result, SCDJFS filed the complaints herein. Mother was referred to Interval Brotherhood Treatment Center. She was discharged on September 25, 2018. Interval Brotherhood staff recommended ongoing counseling and participation in meetings. Mother completed an assessment at CommQuest on February 22, 2019. CommQuest staff recommended an intensive outpatient program. Mother entered CommQuest Deliverance House on April 5, 2019. On April 13, 2019, Mother left the facility against staff advice. She returned to Interval Brotherhood on June 17, 2019, and remained in the facility until August 15, 2019. Mother then went back to CommQuest, but was unsuccessfully discharged from treatment on January 13, 2020, due to non-compliance.

{¶10} Mother missed more than forty drug screens in 2019. She tested positive for amphetamine and methamphetamine on February 25, 2019, positive for amphetamine, methamphetamine, and marijuana on May 1, 2019, positive for amphetamine, marijuana, and alcohol on May 20, 2019, positive for amphetamine, methamphetamine, and marijuana on June 4, 2019, and positive for amphetamine, methamphetamine, and marijuana on October 16, 2019.

{¶11} Although employed at the time of the hearing, Mother struggled with maintaining stable employment throughout the course of the proceedings. Mother had moved at least three times during SCDJF's court and non-court involvement. At the time of the hearing, she was living with a friend. Mother admitted she previously told Williams she did not want the Children to live with the friend. Mother testified she was not involved with any substance abuse treatment. Mother denied the need for mental health treatment and maintained she would not have mental health issues once she obtained "sobriety." Mother indicated she has struggled with methamphetamine use for at least eight years. Mother revealed she had used methamphetamine three times in October, 2019.

{¶12} Rachael Williams testified during the best interest portion of the hearing. Williams stated the Children are physically healthy. Child 1, who had moved placements multiple times throughout the proceeding, had some emotional and behavioral issues. Child 1 had been in his current foster home for several months and was bonded with his foster family. Child 2 and Child 3 are placed together in a foster home. They have been with the foster family since their initial removal. Child 1 and Child 2 are bonded with the foster family and the foster family is interested in adopting them. Williams believed permanent custody was in the Children's best interest. Williams was unaware of any

appropriate relatives interested in pursuing custody of the Children.  When asked if Child 1 would like to return to Mother, Williams acknowledged, "I think that is a yes."  Thereafter, counsel for Mother expressed concern Child 1's wishes were different from the recommendations of the guardian ad litem, adding "usually in those circumstances I think we appoint an attorney" for Child 1.

**{¶13}** The trial court issued separate Findings of Fact and Conclusions of Law on February 3, 2020.  The trial court found Mother had failed to remedy the conditions which caused the removal of the Children from her home.  The trial court further found Mother's severe and chronic chemical dependency rendered her incapable of providing a home for the Children within one year.  The trial court concluded the Children cannot be placed with Mother within a reasonable time or should not be placed with her.  The trial court also concluded it would be in the best interest of the Children to grant permanent custody to SCDJFS.

**{¶14}** In Stark App. Nos. 20-44, 20-45, and 20-46, Mother raises the following identical assignments of error:


I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF C.R. PURSUANT TO R.C.2151.352 AS CLARIFIED BY JUV. R. 4(A) AND JUV. R. 2(Y).

II. THE TRIAL COURT'S JUDGMENT THAT C.R. SHOULD NOT BE PLACED WITH THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶15}** These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

STARK APP. NO. 20-44

I

STARK APP. NO. 20-45

I

STARK APP. NO. 20-46

I

**{¶16}** In her first assignment of error in all three appeals, Mother submits the trial court erred in granting permanent custody of Child 1 without appointing independent counsel for him as Child 1's wishes were different from the guardian ad litem's recommendation.   Mother makes no arguments relative to Child 2 and/or Child 3; therefore, our analysis will address only Child 1.

**{¶17}** R.C. 2151.352 provides:

> A child or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person * * *. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.

**{¶18}** In addition, Juv.R. 4(A) provides:

Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute.

**{¶19}** "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y)[3], a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re* Williams, 101 Ohio St.3d 398, 805 N.E.2d 1110, 2004–Ohio–1500, syllabus. The *Williams* Court did not mandate a child always have independent counsel in a juvenile court proceeding to terminate parental rights. Rather, a child is entitled to independent counsel in a termination of parental rights proceeding only when "certain circumstances" exist. *Id.*

**{¶20}** The *Williams* Court did not explicitly explain the "certain circumstances" which would warrant the appointment of independent counsel, but offered the following guidance to a trial court in ascertaining if "certain circumstances" exist: "courts should

---

[3] The definition of "Party" found in Juv. R. 2(Y) includes "a child who is the subject of a juvenile court proceeding."

make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the guardian ad litem being appointed to represent the child." *Id.* at ¶ 17. Furthermore, a trial court must appoint independent counsel for a child "when a guardian ad litem who is also appointed as the juvenile's attorney recommends a disposition that conflicts with the juvenile's wishes." *Id.*at ¶ 18.

**{¶21}** As such, a trial court ordinarily should appoint independent counsel for a child " 'when the child has consistently and repeatedly expressed a strong desire that differs and is otherwise inconsistent with the guardian ad litem's recommendations'." *In re V.L.*, 12th Dist. Butler No. CA2016-03-045, 2016-Ohio-4898, 2016 WL 3654502, ¶ 39, quoting *In re B.K.,* 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, 2011 WL 3891495, ¶ 19; accord, *In re Hilyard,* 4th Dist. Vinton Nos. 05CA600 - 05CA609, 2006-Ohio-1965, 2006 WL 1045495, ¶ 36. However, a trial court generally need not " 'consider the appointment of counsel based upon a child's occasional expression of a wish to be with a parent or because of a statement made by an immature child'. " *In re N.P.*, 2016-Ohio-3125, 65 N.E.3d 319 (11th Dist.), ¶ 14, quoting *In re Williams*, 11th Dist. Geauga Nos. 2002-G-2454, 2002-Ohio-6588, 2002 WL 31716777, ¶ 24; *accord In re E.S.*, 2d Dist. Clark No. 2016-CA-36, 2017-Ohio-219, 2017 WL 275893, ¶ 49.

**{¶22}** In the case at bar, "certain circumstances" do not exist. At the permanent custody hearing, counsel for Mother asked the caseworker, Rachael Williams, if Child 1 would like to return to Mother.  Williams answered, "I think that is a yes."  Transcript of January 16, 2020 Permanent Custody Hearing at 56.  Other than Williams' opinion, there is nothing in the record to establish Child 1 "consistently and repeatedly expressed a

strong desire" to live with Mother.   Accordingly, we find the appointment of independent counsel was not required.

**{¶23}** Mother's first assignment of error is overruled.

STARK APP. NO. 20-44

II

STARK APP. NO. 20-45

II

STARK APP. NO. 20-46

II

**{¶24}** In her second assignments of error, Mother maintains the trial court's finding the Children should not be placed with her was against the manifest weight and sufficiency of the evidence.

**{¶25}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶26}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child

placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶27}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶28}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶29}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the

factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶30} As set forth in our statement of the facts and case, supra, Mother failed to complete her case plan. Mother's initial case plan included substance abuse treatment, mental health services, complying with probation, and obtaining housing. Individual counseling was recommended to address Mother's anxiety and depression, but Mother was inconsistent with counseling. Mother continued to use methamphetamine throughout the case. Mother failed to successfully complete residential drug treatment despite multiple admissions into treatment facilities. Mother missed more than forty drug screens in 2019. She tested positive for amphetamine and methamphetamine on February 25, 2019, positive for amphetamine, methamphetamine, and marijuana on May 1, 2019, positive for amphetamine, marijuana, and alcohol on May 20, 2019, positive for amphetamine, methamphetamine, and marijuana on June 4, 2019, and positive for amphetamine, methamphetamine, and marijuana on October 16, 2019.

{¶31} Although employed at the time of the hearing, Mother struggled with maintaining stable employment throughout the course of the proceedings. Mother had moved at least three times during SCDJF's court and non-court involvement. At the time of the hearing, she was living with a friend. Mother admitted she previously told Williams she did not want the Children to live with the friend. Mother testified she was not involved with any substance abuse treatment. Mother denied the need for mental health treatment and maintained she would not have mental health issues once she obtained "sobriety." Mother indicated she has struggled with methamphetamine use for at least eight years. Mother revealed she had used methamphetamine three times in October, 2019.

**{¶32}** The Children are physically healthy. Child 1, who had moved placements multiple times throughout the proceeding, had some emotional and behavioral issues. Child 1 had been in his current foster home for several months and was bonded with his foster family. Child 2 and Child 3 are placed together in a foster home. They have been with the foster family since their initial removal. Child 1 and Child 2 are bonded with the foster family and the foster family is interested in adopting them. Williams believed permanent custody was in the Children's best interests.

**{¶33}** Based upon the foregoing, we find the trial court's finding it was in the Children's best interests to grant permanent custody to SCDJFS is not against the manifest weight of the evidence. We further find the trial court's finding the Children could not be placed with Mother within a reasonable period of time or should not be placed with her is not against the manifest weight of the evidence.

**{¶34}** Mother's second assignments of error are overruled.

{¶35} The judgments of the Stark County Court of Common Pleas, Juvenile Division, are affirmed.


By: Hoffman, P.J.

Gwin, J.  and

Baldwin, J. concur